**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANTHONY A. KUKLINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1499 (RMC) |
| | ) | |
| U.S. DEPARTMENT OF THE | ) | |
| TREASURY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION**

Anthony Kuklinski, a resident of the State of Kentucky, is an Inspector with the U.S. Mint Police at the U.S. Bullion Depository in Fort Knox, Kentucky. Mr. Kuklinski has sued the U.S. Department of the Treasury and its Secretary, Jacob Lew, for alleged retaliatory discrimination and constructive discharge based on employment actions that occurred predominantly in Kentucky. Secretary Lew and the Treasury have moved to dismiss or, in the alternative, to transfer those that remain to Kentucky. For reasons set forth below, the Court will grant Defendants' motion to the extent it requests dismissal of the Department of the Treasury, but deny the motion to dismiss the claims against Secretary Lew. Rather, the Court will transfer this case to the United States District Court in the Western District of Kentucky.

## I.  BACKGROUND

Anthony Kuklinski has worked for the Department of the Treasury for approximately 20 years. He worked for the U.S. Mint Police, which is a part of the Treasury, in Fort Knox, Kentucky from 1990 to 2000, and resumed working there in 2004. Mr. Kuklinski is currently an Inspector with the U.S. Mint Police. During the period of time relevant to the

1

allegations set forth in the Complaint, Mr. Kuklinski directly supervised three shift lieutenants, six shift sergeants, and approximately 48 officers.  Compl. [Dkt. 1] ¶¶ 5, 7-8.

Mr. Kuklinski alleges that, in 2008, he was approached by a subordinate officer who complained that she was being sexually harassed by a fellow officer.  As the supervisor responsible for determining whether discipline was warranted, Mr. Kuklinski investigated her complaint.  During that investigation, Mr. Kuklinski asserts that he learned that the officer accused of harassment had used security cameras to track the female officer's movements, placed recording devices around the facility to listen to her conversations, maintained a journal in his locker detailing murder fantasies about her, watched her from under her porch at her residence, and otherwise spied on her.  Mr. Kuklinski recommended removal of the male officer and advised the female officer of her right to seek the assistance of an Equal Employment Opportunity (EEO) counselor.  *Id.* ¶¶ 9-12.

The female officer filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) and, on February 10, 2011, Mr. Kuklinski provided a declaration for the related EEOC investigation.  In the declaration, Mr. Kuklinski stated that he had contacted U.S. Mint Headquarters about his concerns of a possible hostile work environment, had encouraged the female officer to contact an EEO counselor, and had contacted Deborah Hayes at the EEO Office at Headquarters to relay his concerns about the situation.  *Id.* ¶¶ 13-14.

Mr. Kuklinski alleges that his superiors ignored his recommendation that the accused officer be removed.  Instead, they engaged in a plan to protect the officer accused of harassment and to intimidate the female officer.  According to Mr. Kuklinski, as a part of this plan, the female officer became the subject of an internal administrative investigation in which

she was accused of lying to authorities in a civil case.  The female officer maintained that these accusations were made by the officer against whom she had filed her EEO complaint and that the internal investigation was in reprisal for her filing the complaint.  Mr. Kuklinski states that he was also placed under administrative investigation for having an "inappropriate social relationship" with the female officer, but that the investigation was found to be unsubstantiated. *Id.* ¶¶ 15-18.

In April, 2011, shortly after the conclusion of the administrative investigation concerning Mr. Kuklinski, he was placed under a separate investigation by the Department of the Treasury's Office of the Inspector General (OIG) and the Office of Personnel Management (OPM) for "possible misconduct" relating to activities that developed during his routine security clearance update.  During this investigation, Mr. Kuklinski was temporarily removed from his position as Inspector and was placed in an administrative position "with no law enforcement authority and menial and demanding work duties."  *Id.* ¶ 19.  He was relocated to the maintenance building, first to a work bench, and then to a kitchen facility.  *Id.*

On November 7, 2011, Mr. Kuklinski received notice that his "Access to Classified Information" status and his security clearance were officially suspended.  Mr. Kuklinski alleges that this suspension was due to the "entirely pretextual investigation" and that even though the U.S. Mint Police "knew that there were no valid grounds for suspension of [his] security clearance," it delayed reinstatement in order to degrade and humiliate him.  *Id.* ¶¶ 20-21. He further alleges that the supervisory officials responsible for the suspension "have a history of delaying administrative investigations to make the workplace intolerable, intending to evoke resignation or retirement," and that the U.S. Mint Police used "unsubstantiated 'security concerns'" to intimidate him into leaving.  *Id.* ¶ 22.

On March 1, 2012, Mr. Kuklinski received a letter from Lester Leach, Assistant Director for Security, notifying him that his suspension had been rescinded and his security clearance was restored.  He did not have his supervisory authority restored, however, nor was he returned to his former office.  Rather, he was moved out of the main building to a maintenance building and given as an office a storage room that had been used to store paint.  Also on March 1, 2012, Mr. Kuklinski received a letter from U.S. Mint Police Deputy Chief Bill Bailey notifying him of a directed reassignment from his current duty located at the U.S. Bullion Depository in Fort Knox, to the U.S. Mint Headquarters in Washington, D.C., effective May 20, 2012.  *Id.* ¶¶ 23-24.

On March 21, 2012, Commander Paul D. Constable informed Mr. Kuklinski that he had suggested Mr. Kuklinski for the special position at the U.S. Mint Headquarters because "he needed a way to get the Mint Intel program off the ground."  *Id*. ¶ 29.  Mr. Kuklinski did not want this new position because the reassignment was a substantial geographic change and involved substantially different responsibilities, for most of which he has minimal experience; he states that he has very little investigative background in formal intelligence gathering, outside of regular street information gathering and reporting as a Federal Air Marshal.  According to Mr. Kuklinski, Commander Constable recognized that Mr. Kuklinski was not trained for the proposed position and wanted Mr. Kuklinski to take training courses, including a Criminal Investigator (CI) course at the Federal Law Enforcement Training Center.  Mr. Kuklinski asserts that no other inspector has experienced an involuntary transfer and that the other inspector who received CI training was hired specifically to work in the Intel/Investigation Division of the Mint.  Mr. Kuklinski further contends that he was informed that he would be involuntarily separated from the U.S. Mint Police if he refused the reassignment. *Id.* ¶¶ 30-35.

Mr. Kuklinski alleges that all these actions—the investigations, the movement of his office, the revocation of his security clearance and supervisory position, and the reassignment—were taken by the U.S. Mint Police in retaliation for his involvement in the EEO matter related to the female officer's complaint of sexual harassment and his recommendation that the officer accused of harassment be removed. *Id.* ¶¶ 24-27.  He further alleges that the reassignment was instituted to force him to quit. *Id.* ¶ 36.

Mr. Kuklinski filed a formal EEO Complaint on June 27, 2012 based on his reassignment to a non-supervisory position and other actions taken by the U.S. Mint Police.  The EEO investigation was conducted from August 2012 to February 2013. A Final Agency decision was requested and received on July 1, 2013. *Id.* ¶¶ 37, 41-42.

Mr. Kuklinski filed his Complaint in this action on September 27, 2013, alleging unlawful retaliation and constructive discharge under Title VII, 42 U.S.C. § 2000e, against the United States Department of the Treasury and Secretary Lew.  Compl. [Dkt 1].  On March 31, 2014, Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (b)(3), and (b)(6).  [Dkt. 14].  The matter is now fully briefed.

## II.   LEGAL STANDARD

### A.  Subject Matter Jurisdiction

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. When reviewing a motion to dismiss for lack of jurisdiction, a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004).  Nevertheless, "the court need not accept factual inferences drawn by plaintiff[ ] if those inferences are not supported by facts

alleged in the complaint, nor must the Court accept plaintiff['s] legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006). In considering whether it has jurisdiction, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

### B. Venue

Under Federal Rule of Civil Procedure 12(b)(3), a defendant may, at the lawsuit's outset, test whether the plaintiff "has brought the case in a venue that the law deems appropriate." *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006). "In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002)). However, "[i]f the plaintiff's chosen forum is an improper venue under applicable statutes, or is otherwise inconvenient, the Court may dismiss the action or transfer the case to a district where venue would be proper or more convenient." *Modaressi*, 441 F. Supp. 2d at 53 (citing 28 U.S.C. § 1406 (providing for dismissal or transfer when venue is defective) and 28 U.S.C. § 1404 (allowing venue transfer "for the convenience of the parties and witnesses")). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). On a motion to dismiss for improper venue under Rule 12(b)(3), the Court "may consider material outside of the pleadings." *See Williams v. GEICO Corp.*, 792 F.

Supp. 2d 58, 62 (D.D.C. 2011) (citing *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C.

2002)).  To prevail on a motion to dismiss for improper venue, a defendant must present facts

that will defeat a plaintiff's assertion of venue.  *2215 Fifth St. Assocs. v. U-Haul Int'l, Inc.*, 148

F. Supp. 2d 50, 54 (D.D.C. 2001).

### C.  Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

a claim.  A complaint must be sufficient to "give the defendant fair notice of what the . . . claim

is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal citation and quotation marks omitted).  Although a complaint need not include detailed

factual allegations, a plaintiff's obligation to provide the grounds for his entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  *Id.*  The facts alleged "must be enough to raise a right to relief above the

speculative level."  *Id.*

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face."

*Id.* at 570.  A court must treat the complaint's factual allegations as true, "even if doubtful in

fact."  *Id.* at 555.  But a court need not accept as true legal conclusions set forth in a complaint.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Id.*  In deciding a motion under Rule 12(b)(6), a court may consider the facts

alleged in the complaint, documents  attached to the complaint as exhibits or incorporated by

reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.   ANALYSIS

**A.  The United States Department of the Treasury Shall Be Dismissed.**

Under Title VII, it is unlawful for an employer to discriminate against an employee based on that "individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Title VII's anti-retaliation provision makes it unlawful for an employer to retaliate against an employee for making a charge or otherwise participating in EEO proceedings. 42 U.S.C. § 2000e-3(a).  The only proper defendant in a civil action brought under Title VII by a federal employee is "the head of the department, agency, or unit" in which the allegedly discriminatory acts took place.  42 U.S.C. § 2000e-16(c); *see also Mondy v. Secretary of Army*, 845 F.2d 1051, 1053 n.1 (D.C. Cir. 1988); *Jarrell v. United States Postal Service*, 753 F.2d 1088, 1091 (D.C. Cir. 1985).

Here, Mr. Kuklinski has properly named the head of the Department of the Treasury, Mr. Lew, in his official capacity, and has improperly named the Department of the Treasury itself.  Mr. Kuklinski acknowledges that the Department is not a proper defendant.  *See* Pl. Opp. [Dkt. 18] at 9.  Accordingly, the Court will dismiss the Department of the Treasury as a party to this case.  *See, e.g., Mason v. African Dev. Found.*, 355 F. Supp. 2d 85, 89 (D.D.C. 2004) (dismissing agency for lack of jurisdiction where plaintiff named both agency and agency head).[1]

---

[1] Mr. Kuklinski contends that dismissal of the Department of the Treasury may be premature because he is "determining his rights regarding the Agency's mishandling of confidential materials" and "[a]n amendment of his complaint may very well bring the Agency right back into the action."  Pl. Opp. at 10 n.2.  However, the Court can only rule on the claims before it and, at this stage, Mr. Kuklinski has only alleged violations of Title VII.

**B. This Action is Properly Based in Western District of Kentucky**

Defendants argue that dismissal is warranted because venue is improper in the District of Columbia; alternatively, they request that the case be transferred to the Western District of Kentucky. Plaintiff counters that venue is proper in the District of Columbia.

In Title VII cases, Congress intended to limit venue to those jurisdictions actually concerned with the alleged discrimination. *McLaughlin v. Holder*, 864 F. Supp. 2d 134 (D.D.C. 2012) (quoting *Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969)). A plaintiff may bring a Title VII action only in a district that satisfies one of the conditions enumerated in the statute:

> [1] any judicial district in the State in which the unlawful employment practice is alleged to have been committed, [2] in the judicial district in which the employment records relevant to such practice are maintained and administered, or [3] in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, [4] but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3). If a plaintiff brings suit in a district that does not satisfy at least one of the venue requirements listed in Section 2000e-5(f)(3), venue is improper and a court must dismiss the case or, in the interest of justice, transfer the case to a proper venue under 28 U.S.C. § 1406(a). "Although the decision to transfer or dismiss is committed to the sound discretion of the district court, the interest of justice generally requires transferring a case to the appropriate judicial district in lieu of dismissal." *Ellis-Smith v. Sec'y of the Army*, 793 F. Supp. 2d 173, 177 (D.D.C. 2011) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)).

In this case, venue cannot be established under prongs two or three, and Mr. Kuklinski does not claim otherwise. Personnel records and documentation relating to Mr. Kuklinski are maintained in Fort Knox, Kentucky, and Parkersburg, West Virginia, not in

Washington, D.C.  Stringer Decl. [Dkt. 16], ¶ 20.[2]  Additionally, Mr. Kuklinski alleges that he is being constructively discharged from the U.S. Mint in Fort Knox, Kentucky, and that he would have worked in Washington, D.C. *because of*, not in spite of, the alleged retaliatory transfer. Compl.  ¶¶ 54-56.  Thus, "but for the alleged unlawful employment practice," Mr. Kuklinski would have worked in Fort Knox, Kentucky, not Washington, D.C.[3]  Accordingly, Mr. Kuklinski bases his venue argument on prong one, arguing that his claims may be brought in the District of Columbia because it is the "judicial district in the State in which the unlawful employment practice is alleged to have been committed."  Pl. Opp. at 10.

In discerning the proper venue, courts inquire into the "locus of the alleged acts of discrimination."  *Middlebrooks v. England*, Civ. No. 05-556 (JDB), 2005 WL 3213956, at *2 (D.D.C. Nov. 2, 2005).  "Courts can determine venue by applying a 'commonsense appraisal' of events having operative significance."  *James v. Booz-Allen*, 227 F. Supp. 2d 16, 20 (D.D.C. 2002) (quoting *Lamont v. Haig*, 590 F.2d 1124, 1134 (D.C. Cir. 1978)).  "Specifically, venue cannot lie in the District of Columbia when 'a substantial part, if not all, of the employment practices challenged in this action' took place outside the District even when actions taken in the District 'may have had an impact on the plaintiff's situation.'"  *Id.* (quoting *Donnell v. Nat'l Guard Bureau*, 568 F. Supp. 93, 94 (D.D.C. 1983)).

---

[2] The Declaration of Connie Stringer (Field Chief/Officer in Charge at the U.S. Bullion Depository, Department of the Treasury, United States Mint in Fort Knox, Kentucky) was filed as a sealed exhibit in support of Defendants' motion to dismiss.  The Court is not limited to the allegations in the Complaint and may consider material outside the pleadings when deciding a motion under Rules 12(b)(1) or (b)(3).  *Settles*, 429 F.3d at 1107-1108; *Haase v. Sessions*, 835 F.2d 902, 908 (D.C. Cir. 1987)) (Rule 12(b)(1)); *Williams*, 792 F. Supp. 2d at 62 (Rule 12(b)(3)).

[3] Mr. Kuklinski was never actually relocated and never reported for duty in Washington, D.C. Bailey Decl. [Dkt. 14-1] at 1.  The decision to reassign Mr. Kuklinski was rescinded in January of 2013, before this suit was instituted.  *Id.* at 1.  At the time he filed his Complaint, Mr. Kuklinski was still working as an Inspector at the U.S. Mint Police in Fort Knox, Compl. ¶ 1; it is not clear from the record whether he still is employed there.

"When venue is proper in more than one locale, and convenience and justice favor adjudication in a different venue, the case may be transferred pursuant to 28 U.S.C. § 1404(a)."[4] *Hunter v. Johanns*, 517 F. Supp. 2d 340, 343 (D.D.C. 2007); 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."). District courts have discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). "[T]he moving party bears the burden of establishing that transfer is proper." *Schmidt v. Am. Inst. of Physics*, 322 F. Supp. 2d 28, 31 (D.D.C. 2004).

As a threshold matter, "the Court must first determine whether the action could have been brought in the transferee court sought by the moving party." *Milanes v. Holder*, 264 F.R.D. 1, 4 (D.D.C. 2009) (citing *Van Dusen*, 376 U.S. at 617). There is no question here that venue would be proper in the Western District of Kentucky. Mr. Kuklinski resided and worked there at the time he filed the Complaint, and the underlying events surrounding his claims of retaliation and constructive discharge occurred there as well.

To determine whether "considerations of convenience and the interest of justice weigh in favor of transfer," the Court must balance numerous private and public interest factors. *Schmidt*, 322 F. Supp. 2d at 31. The private interests include: (1) the plaintiff's choice of forum (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

---

[4] Drawing all inferences in favor of Mr. Kuklinski's assertions of venue, the Court assumes, without deciding, that venue would be proper in the District of Columbia.

*Id.* at 31-32; *Hunter*, 517 F. Supp. 2d at 344 n.2.  The public interests include: (1) the transferee's familiarity with the governing laws there; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.  *Schmidt*, 322 F. Supp. 2d at 31.

After weighing all these factors and evaluating the locus of Mr. Kuklinski's claims, the Court finds that venue is proper is in Fort Knox, Kentucky.  While Mr. Kuklinski alleges various adverse actions in support of his claims of retaliation and constructive discharge, the only actions clearly taken in Washington, D.C. are the decisions to suspend Mr. Kuklinski's security clearance and to transfer his assignment.[5]  All other alleged adverse employment actions took place outside the District of Columbia.[6]  The investigations into Mr. Kuklinski, the review of his management style, the removal from his role as supervisor over 57 people, and the relocations of his work site involve facts and witnesses all located in Fort Knox, Kentucky.  Def. Reply [Dkt. 22] at 3 n.3; Stringer Decl. ¶ 14.  As noted above, relevant employment records relating to Mr. Kuklinski are also in Fort Knox.  Stringer Decl., ¶ 20.[7]

Mr. Kuklinski contends that that "the decision to retaliate against [him] by taking away his supervisory duties and moving him to the paint storage room[ ] most likely have their

---

[5] Defendants argue that the suspension and reassignment are separate claims, subject to immediate dismissal.  However, Mr. Kuklinski has not alleged that these actions constitute individual causes of action, but cites them as actions that support his claims of retaliation and constructive discharge.  The Court will transfer the Complaint in its entirety so that the Western District of Kentucky can determine whether Mr. Kuklinski has a basis to maintain his claims of retaliation and constructive discharge.  *See In re O'Leska*, No. 00-5339, 2000 WL 1946653, at *1 (D.C. Cir. Dec. 7, 2000) ("It is in the interest of justice to transfer the entire complaint rather than have it heard in two different venues.").

[6] Indeed, as Mr. Kuklinski notes, "the crux of [his] claims is that he was retaliated against in violation of Title VII, when he lawfully participated in a subordinate officer's EEO complaint process."  Pl. Opp. at 8.

[7] Some documents are also maintained in Parkersburg, West Virginia; however, none is in Washington, D.C.  *Id.*

nexus in Washington, D.C. from Deputy Chief Bailey, though discovery is necessary to establish

a direct factual link." Pl. Opp. at 11. This argument is not enough to overcome the Court's

finding that venue is proper in Kentucky. The Complaint does not allege that these decisions, or

other actions buttressing his claims of retaliation, took place in Washington, D.C. Rather, it

broadly alleges that Mr. Kuklinski's supervisors protected the harassing officer, that "the Mint"

placed him under investigation, that he was "removed from his position as Inspector" and

"removed from the Mint's main building" in Fort Knox, and that "the Mint continues to retaliate

against" him. Compl. ¶¶ 15, 17, 19, 25. "Mere speculation of principal office involvement does

not counter the fact that in [Mr. Kuklinski's] complaint, the acts committed occurred in

[Kentucky]." *Robinson v. Potter*, Civ. No. 04-890 (RMU), 2005 WL 1151429, at *4 (D.D.C.

May 16, 2005). The focal point of the inquiry

> is not whether the principal office may have been involved in the determination, but rather, whether venue is proper in light of where the alleged unlawful conduct occurred, where the relevant employment records are located, and where the plaintiff would be employed but for the alleged unlawful conduct. It is not enough to claim that acts occurring in the District of Columbia had an impact. Thus, [a] plaintiff's arguments that the principal office is concerned with the unlawful practice and ultimately had control of the actions are insufficient to establish proper venue.

*Id.* (internal citations omitted). While the Court must accept Mr. Kuklinski's well-pled factual

allegations regarding venue as true, draw all reasonable inferences from those allegations in his

favor, and resolve any factual conflicts in his favor, *Darby*, 231 F. Supp. 2d at 276, he has not

pled facts to suggest that these decisions were made in Washington, D.C. and any inferences

drawn would be mere speculation.

Further, the fact that some decisions may have been based in Washington, D.C.

does not establish a basis for finding proper venue here. Courts in this district have consistently

13

held that "involvement and decision-making" in Washington, D.C. "does not demonstrate that the underlying unlawful employment practice alleged by the plaintiff occurred in the District of Columbia." *Slaby v. Holder*, 901 F. Supp. 2d 129, 134 (D.D.C. 2012) (finding venue improper in Washington, D.C. despite allegations that personnel at FBI Headquarters in D.C. were involved in decision-making process because Virginia was location where plaintiff alleged discriminatory employment practices occurred and where master employment records were kept); *Middlebrooks*, 2005 WL 3213956, at *3 (finding venue in D.C. improper where "allegedly discriminatory termination was ordered by the Washington Navy Yard HRO . . . because, while the HRO's formal authorization of plaintiff's termination had an impact on her situation, a substantial part of the allegedly discriminatory events, including her actual firing, took place in Maryland"); *Donnell*, 568 F. Supp. at 94 (holding personnel decisions made in D.C. were insufficient for venue because a substantial part of the challenged employment practices occurred in Virginia. Indeed, "[b]ecause federal agencies often are headquartered in the District of Columbia, courts in this Circuit are especially vigilant about how strictly the Title VII venue provision is applied in order to avoid finding proper venue in the District for every discrimination lawsuit filed against a government agency, no matter where the employee was located or where the discrimination actually occurred." *Vasser v. McDonald*, Civ. No. 14-185 (RC), 2014 WL 5581113, at *5 (D.D.C. Nov. 4, 2014).

Mr. Kuklinski's immediate supervisors, subordinates, and the relevant employment records remain in the Western District of Kentucky, all of which will need to be evaluated in order to determine whether the Treasury's actions constituted unlawful retaliation. The Court therefore finds that a substantial part of the challenged employment practices occurred in Kentucky and that all private interest factors but one—plaintiff's choice of venue—support

14

venue in the Western District of Kentucky.[8]  Mr. Kuklinski also resides there, thus undercutting

any argument that transfer would be inconvenient.  While there is "a strong presumption against

disturbing plaintiff's initial forum choice," *Pain v. United Techs. Corp.*, 637 F.2d 775, 784 (D.C.

Cir. 1980), that presumption is weakened when the forum is not plaintiff's home forum and most

of the relevant events occurred elsewhere, *Hunter*, 517 F. Supp. 2d at 344 (citing *Gulf Oil Corp.*

*v. Gilbert*, 330 U.S. 501, 508 (1947)) (transferring case despite approval of proposed suspension

in the District of Columbia because events surrounding plaintiff's claims of discrimination

occurred in Maryland, relevant documents and witnesses were located there, and plaintiff herself

resided there).  Accordingly, the Court will transfer the remaining claims to the Western District

of Kentucky.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 14] will be

granted in part and denied in part.  The Court will dismiss Defendant United States Department

of the Treasury as a party to this action.  This case, as against Secretary Lew, shall be transferred

to the United States District Court for the Western District of Kentucky.  A memorializing Order

accompanies this Opinion.


Date: November 18, 2014                             _____/s/_____
                                                   ROSEMARY M. COLLYER
                                                   United States District Judge

---

[8] In regard to factor five of the private factors, there is no allegation that any witnesses would be
unavailable in the Western District of Kentucky.  The public factors do not strongly favor one
district over the other.  "Both courts are presumed to share equal familiarity with Title VII law,
and neither party has advanced any showings concerning relative calendar congestion or local
interest in deciding this controversy."  *Hunter*, 516 F. Supp. 2d at 344 n.4.  Moreover, as this
case has "not evolved past the earliest stages of litigation, the proposed transfer would not
unduly delay the case's progress."  *Johnson v. Lumenos, Inc.,* 471 F. Supp. 2d 74, 77 (D.D.C.
2007).