UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTHONY A. KUKLINSKI                                                PLAINTIFF

v.                                  CIVIL ACTION NO. 3:14-CV-00843-CRS

JACOB J. LEW, Secretary of the Treasury                       DEFENDANT

### MEMORANDUM OPINION

This matter is before the Court on the motion of Defendant Jacob J. Lew, Secretary of the Treasury, to partially dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (DN 38). Defendant argues that the Court lacks jurisdiction over this action to the extent Plaintiff Anthony A. Kuklinski's claims challenge the merits of decisions to investigate and suspend his security clearance. For the following reasons, Defendant's motion will be granted.

**I.     BACKGROUND**

For purposes of this motion, the Court accepts as true the following well-pleaded factual allegations. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The United States Mint Police employed Plaintiff as an inspector, stationed at the United States Bullion Depository at Fort Knox, Kentucky. (Compl., DN 1, ¶ 7.) The Mint Police serve as the law enforcement arm of the United States Mint—an agency within the Department of the Treasury. As an inspector for the Mint Police, Plaintiff supervised fifty-seven officers. (Compl., DN 1, ¶ 8.) In 2008, a female officer under Plaintiff's command approached him, complaining of sexual harassment by a coworker. (Compl., DN 1, ¶ 9.) Plaintiff looked into the female

officer's claims, and he ultimately recommended that the coworker be removed from his position. (Compl., DN 1, ¶¶ 10–12.)

In addition, Plaintiff advised the female officer of her right to seek redress from the Equal Employment Opportunity Commission ("EEOC"). (Compl., DN 1, ¶ 12.) The female officer subsequently filed a formal complaint with the EEOC. (Compl., DN 1, ¶ 13.) On February 10, 2011, Plaintiff provided a declaration to the EEOC's investigator in which he expressed concerns over the potential sexual harassment and hostile work environment. (Compl., DN 1, ¶¶ 13–14.)

While the EEOC continued its inquiry, Plaintiff was placed under administrative investigation based on accusations that he maintained an "inappropriate social relationship" with the female officer. (Compl., DN 1, ¶ 17.) The administrative investigation terminated after finding those accusations to be unsubstantiated. (Compl., DN 1, ¶ 18.)

In April 2011, the Treasury began a separate investigation of Plaintiff, conducted through its Office of the Inspector General and the Office of Personnel Management. (Compl., DN 1, ¶ 19.) That investigation started as a result of "possible misconduct" unearthed in Plaintiff's routine security-clearance update. (Compl., DN 1, ¶ 19.) During the investigation, the Treasury stripped Plaintiff of his supervisory authority and law enforcement power, reassigning him to an administrative position. (Compl., DN 1, ¶ 19.) The Treasury also relocated Plaintiff's work space to a maintenance building, where he used a work bench for a desk. (Compl., DN 1, ¶ 19.) When the maintenance employees needed the work bench, Plaintiff moved to the maintenance building's break room. (Compl., DN 1, ¶ 19.)

Seven months into the investigation, on November 7, 2011, the Treasury officially suspended Plaintiff's security clearance and access to classified information. (Compl., DN 1, ¶ 20.) Plaintiff characterizes the investigation and suspension of his security clearance as

"entirely pretextual" and designed to prolong his exposure to "degrading and humiliating" workplace conditions. (Compl., DN 1, ¶¶ 20–21.) Plaintiff further alleges that his superiors use investigations based on "unsubstantiated 'security concerns'" to force employees to resign or retire. (Compl., DN 1, ¶ 22.)

On March 1, 2012, the Treasury lifted the suspension and reinstated Plaintiff's security clearance and access to classified information. (Compl., DN 1, ¶ 23.) The Treasury, however, did not restore Plaintiff's supervisory authority. (Compl., DN 1, ¶ 23.) Nor did it return Plaintiff to his previous work space. (Compl., DN 1, ¶ 23.) Instead, the Treasury converted a storage room in the maintenance building into Plaintiff's new office. (Compl., DN 1, ¶ 23.)

The same day the suspension ended, Plaintiff received notice of a "directed reassignment" from his duty location in Fort Knox, Kentucky, to the United States Mint headquarters in Washington, D.C. (Compl., DN 1, ¶ 24.) The new position at headquarters focused on intelligence gathering—a field in which Plaintiff holds no training and minimal experience. (Compl., DN 1, ¶¶ 29–30, 32–33.) Rather than reassign a more qualified inspector, Plaintiff's superiors expected him to undergo courses in criminal investigation. (Compl., DN 1, ¶¶ 30–31.) If Plaintiff refused the directed reassignment, his employment with the Mint Police would be terminated. (Compl., DN 1, ¶ 35.)

After pursuing his case with EEOC, Plaintiff commenced this action in which he claims retaliation and constructive discharge[1] under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Compl., DN 1, ¶¶ 37, 41, Cts. I–II.) He joined as defendants the Department of the Treasury and Secretary Lew in his official capacity. (Compl., DN 1, ¶¶ 2–3.) Plaintiff

---

[1] Plaintiff's claim for constructive discharge is intertwined with the retaliation claim. Plaintiff alleges that the Treasury is constructively discharging him in retaliation for his involvement in the female officer's case before the EEOC. (Compl., DN 1, ¶ 51.) He further alleges that the Treasury's "retaliatory actions" are "a direct and proximate cause" of the constructive discharge. (Compl., DN 1, ¶ 56.)

alleges that the Treasury took each of the foregoing actions—the administrative investigation, the investigation and suspension of his security clearance, the removal of his authority as a supervisor, the relocation of his work space, and the directed reassignment—to retaliate for his involvement in the female officer's case before the EEOC. (Compl., DN 1, Ct. I.) The Treasury allegedly sought to create working conditions so intolerable as to force Plaintiff's resignation. (Compl., DN 1, Ct. II.)

Plaintiff originally filed this action in the United States District Court for the District of Columbia. (Compl., DN 1.) But that court transferred the case after finding a more appropriate venue in the Western District of Kentucky. (Op. of Nov. 18, 2014, DN 27, at 9–15; Order of Nov. 18, 2014, DN 28.) Prior to transfer, however, the court dismissed the Treasury as a defendant, because a Title VII claim by a federal employee must be brought against "'the head of the department, agency, or unit' in which the allegedly discriminatory acts took place." (Op. of Nov. 18, 2014, DN 27, at 8 (quoting 42 U.S.C. § 2000e-16(c)); Order of Nov. 18, 2014, DN 28.)

Defendant Lew now moves to partially dismiss for lack of subject matter jurisdiction (DN 38). Defendant contends that the Court lacks jurisdiction to hear Plaintiff's claims to the extent they challenge the merits of decisions to investigate and suspend his security clearance.

## II.     STANDARD

The federal district courts are "'courts of limited jurisdiction. They possess only that power authorized by Constitution and statute.'" *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S. Ct. 2611, 162 L. Ed. 2d 502 (2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)). "'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1868)). For a court to adjudicate the merits of a claim without jurisdiction "is, by very definition, for a court to act ultra vires." *Id.* at 101–02.

Rule 12(b)(1) offers a procedural vehicle by which a party may seek dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where, as here, the Rule 12(b)(1) motion merely questions the sufficiency of the jurisdictional pleading—without the aid of extrinsic evidence—the Court accepts the allegations in the complaint as true. *Gentek*, 491 F.3d at 330. As the party requesting the exercise of federal jurisdiction, however, Plaintiff bears the burden of establishing that such jurisdiction exists. *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

### III.    DISCUSSION

#### A.    Res Judicata and the Law-of-the-Case Doctrine

As a preliminary matter, Plaintiff raises the doctrines of res judicata and law of the case as bars to consideration of Defendant's Rule 12(b)(1) motion. Plaintiff relies on the order of the transferor court granting in part and denying in part a previous motion to dismiss in which Defendant presented the same security-clearance argument, among other possible grounds for dismissal. (Order of Nov. 18, 2014, DN 27; Mot. to Dismiss, DN 14, at 5–9.) But neither res judicata nor the law-of-the-case doctrine precludes review of the pending motion.

First, "[t]he principles of res judicata apply only when a final judgment has been rendered." *Wilkins v. Jakeway*, 183 F.3d 528, 534 (6th Cir. 1999) (citing Restatement (Second) of Judgments § 13 (1982)). The transferor court issued a mere interlocutory order, leaving the

central issues in this litigation unresolved. The order did not constitute a final judgment, and therefore, res judicata is inapplicable in the present circumstances.

Second, the law-of-the-case doctrine provides that, once a court decides an issue either explicitly or by necessary inference from the disposition, the decision continues to govern at subsequent stages of the litigation. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). The doctrine, however, "is discretionary when applied to a coordinate court or the same court's own decisions." *Bowling v. Pfizer, Inc.*, 132 F.3d 1147, 1150 (6th Cir. 1998). Here, the transferor court sent "the Complaint in its entirety" to the Western District of Kentucky without deciding on the justiciability of the security-clearance determinations. (Op. of Nov. 18, 2014, DN 27, at 12 n.5.) Furthermore, even if a decision had been reached, the law-of-the-case doctrine does not preclude a court from reconsidering the existence of subject matter jurisdiction. *Amen v. City of Dearborn*, 718 F.2d 789, 793–94 (6th Cir. 1983). Accordingly, the Court will entertain Defendant's Rule 12(b)(1) motion.

### B.    Justiciability of Security-Clearance Decisions

To the extent Plaintiff's Title VII claims contest the merits of the security-clearance investigation and suspension, the Court is without jurisdiction to hear the dispute. In *Department of the Navy v. Egan*, the Supreme Court held that the Merit System Protection Board lacked statutory authority "to review the substance of an underlying decision to deny or revoke a security clearance in the course of reviewing an adverse action." 484 U.S. 518, 520, 526–30, 108 S. Ct. 818, 98 L. Ed. 2d 918 (1988). "[T]he grant of security clearance to a particular employee, a sensitive and inherently discretionary judgment call, is committed by law to the appropriate agency of the Executive Branch." *Id.* at 527. A security-clearance decision is "an attempt to predict [an individual's] possible future behavior and to assess whether, under

compulsion of circumstances or for other reasons, he might compromise sensitive information."

*Id.* at 528. That "[p]redictive judgment" must be made by an agency "with the necessary expertise in protecting classified information":

> For "reasons . . . too obvious to call for enlarged discussion," the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence. Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk.

*Id.* at 529 (quoting *CIA v. Sims*, 471 U.S. 159, 170, 105 S. Ct. 1881, 85 L. Ed. 2d 173 (1985)). Security clearances fall within the purview of the executive branch, and "unless Congress specifically has provided otherwise, courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs." *Id.* at 530.

*Egan*'s separation-of-powers rationale applies with equal force to prohibit judicial review of Title VII claims premised on security-clearance decisions. *Tenenbaum v. Caldera*, 45 F. App'x 416, 418 (6th Cir. 2002); *Ryan v. Reno*, 168 F.3d 520, 523–24 (D.C.C. 1999); *Becerra v. Dalton*, 94 F.3d 145, 148–49 (4th Cir. 1996); *Perez v. FBI*, 71 F.3d 513, 514–15 (5th Cir. 1995) (per curiam); *Brazil v. U.S. Dep't of the Navy*, 66 F.3d 193, 196–97 (9th Cir. 1995). Title VII contains "no unmistakable expression of purpose by Congress" to subject security-clearance decisions to review in the federal courts. *Becerra*, 94 F.3d at 149; *accord Brazil*, 66 F.3d at 197. Yet, Plaintiff's Title VII claims for retaliation would require the Court to examine the legitimacy and possible pretextual nature of the Treasury's proffered reasons for investigating and suspending the security clearance. *Perez*, 71 F.3d at 514; *see Tenenbaum*, 45 F. App'x at 418; *Ryan*, 168 F.3d at 523–24; *Brazil*, 66 F.3d at 196–97. The inquiry into whether a retaliatory

motive animated the Treasury's decisions "constitute[s] precisely the sort of interference criticized in *Egan*."[2] *Tenenbaum*, 45 F. App'x at 418.

Plaintiff wishes to distinguish his claims by noting that he challenges the investigation and suspension of the security clearance, as opposed to the typical denial or revocation. But the merits underlying an interim action, such as an investigation or suspension, are shielded from judicial scrutiny to the same degree as the decision to deny or revoke a security clearance. *Becerra*, 94 F.3d at 149; *Hill v. Dep't of Air Force*, 844 F.2d 1407, 1411 (10th Cir. 1988). The distinction between the initial stages of a security investigation and the ultimate denial or revocation of a security clearance is a distinction without a difference. *Becerra*, 94 F.3d at 149. An agency's reason for choosing to investigate and suspend a security clearance may be the same reason the final act of denial or revocation is taken. *Id.* Here, the Treasury decided to reinstate Plaintiff's security clearance. That outcome, however, does not make the interim actions of investigation and suspension any less essential to the agency's duty to safeguard sensitive information and its corresponding power to identify potential threats. Whether the Treasury had a sufficient reason to investigate and suspend Plaintiff as a security risk "goes to the very heart of the 'protection of classified information [that] must be committed to the broad discretion of the agency responsible.'" *Id.* (quoting *Egan*, 484 U.S. at 529).

The merits underlying the investigation and suspension of the security clearance cannot serve as grounds for a justiciable claim under Title VII. Therefore, Plaintiff's claims for retaliation and constructive discharge will be dismissed for lack of subject matter jurisdiction to

---

[2] Though the merits underlying a security-clearance decision cannot be scrutinized, judicial review may be appropriate where the plaintiff alleges the violation of a constitutional right in this context. *Tenenbaum*, 45 F. App'x at 418 (citing *Webster v. Doe*, 486 U.S. 592, 108 S. Ct. 2047, 100 L. Ed. 2d 632 (1988)). The Court may also hear a claim in which the agency is alleged to have violated its own regulations in making a security-clearance decision. *Id.* (citing *Service v. Dulles*, 354 U.S. 363, 77 S. Ct. 1152, 1 L. Ed. 2d 1403 (1957)). Here, Plaintiff advanced neither of those potential grounds for review in his allegations.

the extent they challenge the substance of those security-clearance decisions. Plaintiff's Title VII claims otherwise remain intact. The Court expresses no opinion on any of the other alleged acts of retaliation, such as the administrative investigation, the removal of Plaintiff's authority as a supervisor, the relocation of his work space, and the directed reassignment.

Finally, both parties raise some general concerns over the bounds of discovery in this action. Discovery, of course, will be conducted according to the scope and limits set forth in Federal Rule of Civil Procedure 26. But, without a concrete discovery dispute to sharpen the issues and arguments, any further discussion would be premature.

## IV. CONCLUSION

For the reasons stated above, the Court will grant Defendant's motion to partially dismiss for lack of subject matter jurisdiction (DN 38). Plaintiff's Title VII claims will be dismissed without prejudice to the extent they challenge the merits underlying the decisions to investigate and suspend his security clearance. In all other respects, Plaintiff's claims remain intact. A separate order will be entered this date in accordance with this Memorandum Opinion.