UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTHONY A. KUKLINSKI     PLAINTIFF

v.     CIVIL ACTION NO. 3:14-cv-00843-CRS-DW

STEVEN MNUCHIN,[1]
United States Secretary of the Treasury     DEFENDANT

Memorandum Opinion

I.    Introduction

This matter is before the Court on the partial motion of Defendant Steven Mnuchin, United States Secretary of the Treasury ("the Secretary") to dismiss the amended complaint, ECF No. 90. Plaintiff Anthony A. Kuklinski responded, ECF No. 93. The Secretary replied, ECF No. 94. For the reasons explained below, the Court will grant the Secretary's partial motion to dismiss.

II.    Allegations in the Amended Complaint

Kuklinski apparently is an Inspector with the United States Mint Police at the United States Bullion Depository in Fort Knox, Kentucky. Am. Compl. ¶ 1, ECF No. 83. He has been with the United States Mint Police since 1990. *Id.* ¶ 7. He worked at Fort Knox between 1990 and 2000. *Id.* He returned to Fort Knox in 2004 and has worked there since then. *Id.*

During the period of time relevant to the amended complaint, Kuklinski directly supervised approximately 60 people, most of whom were subordinate officers. *Id.* ¶ 8. In his supervisory capacity, Kuklinski was responsible for determining whether to discipline an officer

---

[1] Under Federal Rule of Civil Procedure 25(d), Steven Mnuchin, the current Secretary of the United States Treasury, is substituted for Jacob J. Lew, the former Secretary of the United States Treasury.

1

in his command who had been accused of sexually harassing another subordinate officer. *Id*. ¶ 10.

In 2008, a female subordinate officer approached Kuklinski and complained that a male subordinate officer ("the accused officer") was sexually harassing her. *Id*. ¶ 9. During the ensuing investigation of her claims, Kuklinski learned that the accused officer had used the United States Bullion Depository cameras to track the female officer's movements, placed recording devices around the facility to capture her conversations, maintained a journal in his locker detailing fantasies of murdering her, surveilled her from under her porch at her residence in a rural area, and otherwise spied on her. *Id*. ¶ 11. As a result of his investigation, Kuklinski recommended that the accused officer be removed from his position at the United States Mint Police. *Id*. ¶ 12. He also advised the female officer that she could seek the assistance of an EEO counselor to remedy any adverse effect that she had perceived in the workplace. *Id*.

The female officer later filed a formal EEO complaint. *Id*. ¶13. The EEO investigator investigating her complaint requested that Kuklinski provide a declaration under oath. *Id*. Kuklinski did so on February 10, 2011. *Id*. In his declaration, Kuklinski acknowledged that he had notified the United States Mint headquarters regarding his concerns of a potentially hostile work environment for the female officer. *Id*. ¶ 14. He also noted in his declaration that he encouraged the female officer to contact an EEO counselor and had contacted Deborah Hayes at the EEO headquarters to explain the female officer's situation. *Id*.

According to Kuklinski, his superiors at the United States Mint Police took several actions to protect the accused officer, to intimidate the female officer, to suppress Kuklinski's criticism of the accused officer, and to disregard his recommendation that the accused officer be removed from his position. *Id*. ¶ 15. For example, the female officer became the subject of an

internal administrative investigation in which she was falsely accused of lying to authorities in a civil case. *Id*. ¶ 16. She claimed that the accused officer had initiated the investigation in reprisal for her filing an EEO complaint regarding the alleged harassment. *Id*.

During the EEO investigation of the female officer's complaint, the United States Mint also investigated Kuklinski for having an "inappropriate social relationship" with the female officer. *Id*. ¶ 17. This investigation caused Kuklinski and his spouse to experience stress. *Id*. This investigation, however, was found to be unsubstantiated. *Id*. ¶ 18.

In April 2011, the Treasury's OIG and Office of Personnel Management placed Kuklinski under investigation for "possible misconduct" regarding activities that developed during his routine security clearance update. *Id*. ¶ 19. If true, the possible misconduct could have jeopardized his security clearance. *Id*. During the investigation, Kuklinski was removed from his position as an inspector and placed in an administrative position. He was also removed from the United States Mint's main building and relocated to a work bench in the maintenance building. *Id*. Kuklinski was eventually moved to the maintenance building's "break room." *Id*.

In November 2011, Kuklinski's superiors at the United States Mint Police notified him that his access to classified information and security clearance were officially suspended. *Id*. ¶ 20. They allegedly had delayed reinstating his security clearance to prolong Kuklinski's exposure to the "break room." *Id*. ¶ 21.

Upon the intervention of counsel for Kuklinski, his superiors reinstated his security clearance. *Id*. ¶ 23. In March 2012, Lester Letch, Assistant Director for Security, notified Kuklinski that the suspension of his access to classified information was rescinded and that his security clearance had been restored. *Id*. Kuklinski's supervisory authority, however, was not

3

restored. *Id*. Kuklinski was then moved into a storage room in the maintenance building, and an office was apparently set up for him. *Id*.

On the same day that Kuklinski's security clearance was reinstated, United States Mint Police Deputy Chief Bill Bailey notified Kuklinski that he would be directly reassigned from his current duty location at the United States Bullion Depository in Fort Knox to the United States Mint Headquarters in Washington, D.C. in May 2012. *Id*. ¶ 24. Bailey also told Kuklinski that he would not be returned to his former supervisory position. *Id*. ¶ 25.

Also in March 2012, Commander Paul D. Constable visited Kuklinski at his office in the maintenance building. *Id*. ¶ 29. There, Constable explained that he had suggested Kuklinski for a special position in Washington, D.C., to which Kuklinski was being transferred. *Id*. Constable claimed that he needed a way to start the United States Mint Intel program. *Id*. Constable recognized that Kuklinski had no training for the position but stated that he wanted to prepare Kuklinski for his new role by sending him to the criminal investigator course and other, similar courses at the Federal Law Enforcement Training Center. *Id*. ¶ 30. During his conversation with Kuklinski, Constable apparently admitted that another inspector had already received this training. *Id*. ¶ 29.

Kuklinski had little investigative background in formal intelligence gathering. *Id*. ¶ 32. But at some point, Kuklinski was informed that if he refused the reassignment to Washington, D.C., he would be terminated from his position with the United States Mint Police. *Id*. ¶ 35.

In June 2012, Kuklinski filed a formal EEO complaint. *Id*. ¶ 37. After he filed the formal EEO complaint, the Treasury representatives sought to mediate his claims. *Id*. ¶ 38. At the mediation, Kuklinski's counsel produced photographs of his workspace—the storage room in the maintenance building—to demonstrate the quality of his working environment. *Id*. ¶ 39. The

4

Treasury's representatives provided the photographs to Kuklinski's superiors at the United States Bullion Depository. *Id*. The superiors then sought to have Kuklinski disciplined for taking photographs of the United States Bullion Depository in violation of unstated security concerns. *Id*.

Also during the mediation, the Treasury requested that Kuklinski submit his medical records so that a medical expert could assess his claims for psychological damages. *Id*. ¶ 40. But counsel for the United States Mint, Irwin Ansher, also sent the medical expert the standards applicable to Kuklinski's position with the United States Mint Police. *Id*. Ansher requested that the expert provide a determination on whether, given his health, Kuklinski would meet the standards for United States Mint Police Officer positions. *Id*. The expert determined that the working conditions in the maintenance building likely exacerbated a medical condition suffered by Kuklinski and could cause him psychological injury. *Id*. The expert concluded that Kuklinski would not be medically qualified for a United States Mint police officer position. *Id*.

The Treasury representatives then provided this confidential medical opinion letter to Kuklinski's superiors at the United States Bullion Depository. *Id*. The superiors ordered Kuklinski to undergo a fitness for duty test. *Id*. This order was withdrawn after Kuklinski's counsel protested. *Id.*

Kuklinski asserts four causes of action in his amended complaint against the Secretary and the United States Treasury. First, Kuklinski alleges that the allegedly discriminatory and retaliatory actions of the Secretary and the United States Treasury violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et. seq*. (Count I). *Id*. ¶¶ 43–49. Second, Kuklinski asserts that the actions of the Secretary and the United States Treasury constituted a constructive discharge (Count II). *Id*. ¶¶ 50–57. Third, he maintains that the actions of the Secretary and the

5

United States Treasury constituted an intentional infliction of emotional distress (Count III). *Id*. ¶¶ 58–65. Fourth and finally, Kuklinski alleges that the Secretary and the United States Treasury's breach of the confidentiality agreement at the EEO mediation gave rise to a breach of contract claim (Count IV). *Id*. ¶¶ 66–71. Kuklinski requests a declaratory judgment that his legal rights were violated, an injunction enjoining the Secretary and the United States Treasury from engaging in such conduct in the future, an injunction preventing his transfer from Fort Knox to Washington, D.C., lost fringe benefits and/or front salary and benefits, statutory compensatory damages, an award of attorney fees and costs, an injunction requiring the Secretary and the United States to take appropriate nondiscriminatory measures to overcome the effects of discrimination and retaliation, punitive damages, and other relief to which he is entitled. *Id*. 14–15.

III. <u>Discussion</u>

The Secretary now moves for a partial dismissal of Kuklinski's amended complaint under Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss 1, ECF No. 90. The Secretary argues that Kuklinski's Title VII claim (Count I) should be dismissed to the point that it challenges the merits of the Treasury's decision to investigate and suspend Kuklinski's security clearance because (1) this Court has already determined that security clearance issues are not justiciable under Title VII and (2) the law of the case doctrine prevents the issue from being relitigated. Mem. Supp. Mot. Dismiss 2–3, ECF No. 90-1.

Rule 12(b)(6) provides that a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a pleading must contain sufficient facts to state a claim that is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A pleading states a plausible claim for relief when the court

may "draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, the court must "construe the complaint in the light most favorable to the [non-moving party], accept its allegations as true, and draw all reasonable inferences in favor of the [non-moving party]." *See Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

Before addressing the merits of the Secretary's arguments, the Court finds that a brief review of its August 21, 2015 memorandum opinion and order would be of assistance in deciding the present motion to dismiss. The August 21, 2015 order was issued in response to the Secretary's motion to dismiss Kuklinski's original complaint under Federal Rule of Civil Procedure 12(b)(1). Mem. Op. 8/21/2015 1, ECF No. 43. In support of his motion to dismiss, the Secretary had argued that the Court lacked jurisdiction over the action to the extent that Kuklinski challenged the merits of the United States Mint's decision to investigate and suspend his security clearance. *Id*.

As explained in the memorandum opinion, the Court first determined that the doctrines of res judicata and the law of the case did not prevent it from reconsidering the existence of subject matter jurisdiction because the issue had never previously been decided. *Id*. at 5–6. The Court then determined that it was without jurisdiction to hear Kuklinski's Title VII claims to the extent that they contested the merits of his security clearance investigation and suspension. *Id*. at 6. In support of this conclusion, the Court cited to *Department of the Navy v. Egan*, 484 U.S. 518 (1988). The Court noted, however, that a court may hear a claim in which the agency is alleged to have violated its own regulations in making a security clearance decision. *Id*. at 8 n.2 (citing

7

*Tenenbaum v. Caldera*, 45 F. App'x 416, 418 (6th Cir. 2002)). The Court also explained that it "expresse[d] no opinion on any of the other alleged acts of retaliation, such as the administrative investigation, the removal of Plaintiff's authority as a supervisor, the relocation of his work space, and the directed reassignment." *Id*. at 9. The Court thus dismissed Kuklinski's Title VII claims asserted in his original complaint to the extent that the claims challenged the merits of decisions to investigate and suspend his security clearance. Order 8/21/2015 1, ECF No. 44.

Turning to the first of the Secretary's arguments, the Secretary contends that the Court should dismiss Kuklinski's Title VII claim in the amended complaint to the extent that it challenges the merits of the Treasury's decision to investigate and suspend his security clearance. Mem. Supp. Mot. Dismiss 2, ECF No. 90-1. The Secretary explains that this Court has already determined that, under relevant case law, security clearance issues are not justiciable under Title VII. *Id*. Kuklinski argues in opposition that he is not challenging the merits of the Treasury's decision to investigate and suspend him; rather, he asserts, he is challenging the United States Mint's failure to follow its own regulations and procedures in investigating and suspending his security clearance. Resp. Opp. Mot. Dismiss 2, ECF No. 93.

As this Court previously explained, a court generally cannot review the merits of an executive agency decision to revoke a security clearance. *Tenenbaum*, 45 F. App'x at 417. Security clearance decisions should be free from the interference of the courts, which do not have the expertise to make decision regarding national security. *Egan*, 484 U.S. at 529–30. The Sixth Circuit has determined that this reasoning applies when a court is asked to review the merits of an executive agency's decision to revoke a security clearance in a Title VII claim. *Tenebaum*, 45 F. App'x, at 417.

Given this precedent, the Court will dismiss Kuklinski's Title VII claim to the extent that it challenges the merits of the Treasury's decision to investigate and suspend his security clearance. Kuklinski's Title VII claim otherwise remains intact.

The Secretary secondly maintains that the Court should also dismiss Kuklinski's Title VII claim to the extent that it challenges the merits of the Treasury's decision to investigate and suspend his security clearance because the issue has already been decided, thereby triggering the law of the case doctrine. Mem. Supp. Mot. Dismiss 2–3, ECF No. 90-1. Kuklinski again argues that he is challenging the United States Mint's failure to follow its own regulations and procedures in investigating and suspending his security clearance. Resp. Opp. Mot. Dismiss 2, ECF No. 93.

As this Court previously noted in its August 11, 2015 order, the law of the case doctrine provides that, once a court decides an issue either explicitly or by necessary inference from the disposition, the decision continues to govern at subsequent stages of the litigation. *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006). As Kuklinski's Title VII claim will be dismissed to the extent it challenges the merits of the Treasury's decision to investigate and suspend his security clearance based on jurisdictional grounds, the Court declines to address whether the law of the case doctrine applies here.

IV.	Conclusion

The Court will grant the Secretary's partial motion to dismiss. The Court will dismiss with prejudice Kuklinski's Title VII claim (Count I) to the extent it challenges the merits of the Treasury's decision to investigate and suspend his security clearance. An order will be entered in accordance with this memorandum opinion.

March 29, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**