UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14CV-00843-CRS

ANTHONY A. KUKLINSKI                                                                              PLAINTIFF

VS.

JACOB J. LEW, Secretary of the
United States Treasury                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a "Motion to Extend Discovery for a Limited Purpose" (DN 72) filed by Plaintiff Anthony A. Kuklinski ("Kuklinski"). Defendant Jacob J. Lew, Secretary of the United States Treasury Department ("Treasury"), has responded (DN 74), and Kuklinski has replied (DN 78). The parties disagree as to whether Kuklinski should be permitted to extend the discovery period to take four additional depositions in this Title VII case. For the following reasons, Kuklinski's motion to extend discovery is **granted in part** and **denied in part.**

Background

Anthony Kuklinski worked for many years as an Inspector with the U.S. Mint Police at the U.S. Bullion Depository in Fort Knox, Kentucky ("U.S. Mint Facility") where he supervised almost sixty employees, including shift lieutenants, shift sergeants, and subordinate officers. (DN 1, at ¶ 7-8). According to Kuklinski, in 2008, a female subordinate officer complained to him that

1

another officer was sexually harassing her. (*Id.* at ¶ 8). After conducting an investigation on her complaint, Kuklinski recommended the harassing officer be removed from his position. (*Id.* at ¶ 10-12). Kuklinski additionally advised the harassed officer that she could seek assistance from an EEO counselor to remedy the workplace harassment. (*Id.* at ¶ 11-12). The female officer subsequently filed a formal complaint with the EEOC. (*Id.* at ¶ 13). Kuklinski provided a declaration to the EEOC's investigator that expressed his concerns over the potential sexual harassment and hostile work environment. (*Id.* at ¶ 13-14).

During the EEOC's ongoing inquiry into the harassment claim, the Treasury placed Kuklinski under administrative investigation based on accusations that he maintained an "inappropriate social relationship" with the female officer that reported harassment. (*Id.* at ¶ 17). This "administrative investigation" was terminated after the accusations were found to be unsubstantiated. (*Id.* at ¶ 18).

In April of 2011, the Treasury began a separate investigation of Kuklinski, through its Office of the Inspector General ("OIG") and the Office of Personnel Management ("OPM"), based on "possible misconduct" unearthed in Kuklinski's routine security-clearance update. (*Id.* at ¶ 19). During this investigation, the Treasury stripped Kuklinski of his supervisory authority and law enforcement power, reassigning him to an administrative position. (*Id.*). Kuklinski states that the Treasury relocated his workspace to a maintenance building, where he either had to use a work bench for a desk or work from the building's break room. (*Id.*).

Almost seven months into this investigation, the Treasury officially suspended Kuklinski's security clearance and access to classified information. (*Id.* at ¶ 20). In March of 2012, the Treasury lifted the suspension and reinstated Kuklinski's security clearance and access to

classified information but did not restore his supervisory authority. (*Id.* at ¶ 23). Rather than returning him to his previous workspace, Kuklinski claims the Treasury converted a storage room in the maintenance building into his new office. (*Id.*). The same day his suspension ended, Kuklinski received notice of "directed reassignment" from his duty location in Fort Knox, Kentucky, to the United States Mint Headquarters in Washington, D.C. (*Id.* at ¶ 24). Kuklinski states that if he refused the directed reassignment, his employment with the U.S. Mint would be terminated. (*Id.* at ¶ 35).

After pursuing his case with the EEOC, Kuklinski commenced this action. He asserts that the Treasury violated Title VII of the Civil Rights Act of 1962 (Count I), sought to create working conditions so intolerable as to force his resignation (Count II), and breached a mediation agreement (Count III). (*Id.* at ¶ 42-29, 50-57; DN 83, at ¶ 66-71).

In January of 2015, the Treasury sought partial dismissal of the action for lack of subject matter jurisdiction. (DN 38). The Court granted the Treasury's motion in part, dismissing Kuklinski's Title VII claims "to the extent they challenge the merits underlying the decisions to investigate and suspend his security clearance" based on *Dep't of the Navy v. Egan*, 484 U.S. 518 (1988). (DN 43, at p. 9). The Court specified that "[i]n all other respects, [Kuklinski's] claims remain intact." (*Id.*).

The original deadline for the parties to complete discovery in the case was December 9, 2016. (DN 52). On that date, Kuklinski filed the instant "motion for extension of time to complete discovery for a limited purpose." (DN 72). Kuklinski seeks a sixty-day extension of discovery to take the depositions of Lester A. Leach and Irwin Ansher and the Fed. R. Civ. P. 30(b)(6)

depositions of the U.S. Mint and the Treasury OIG. (*Id.*). The Treasury urges the Court to deny this motion.

Standard

Under Rule 6 of the Federal Rules of Civil Procedure, when an act "may or must be done within a specified time, the court may, for good cause, extend the time" if the request is made "before the original time or its extension expires." Fed.R.Civ.P. 6(b)(1)(A). In the instant case, the request for extension was made on the date of the discovery deadline. As such, Kuklinski must demonstrate good cause for the Court to grant an extension.

The Court has wide discretion in dealing with discovery matters, including its evaluation of "good cause" for a deadline extension. *See S.S. v. E. Ky. Univ.,* 532 F.3d 445, 451 (6th Cir. 2008); *Chrysler Corp. v. Fedders Corp.,* 643 F.3d 1229, 1240 (6th Cir. 1981). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed.R.Civ.P. 26(b)(1). Relevance is to be "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

<u>Analysis</u>

A. Deposition of Lester A. Leach

Kuklinski argues it is necessary to take the deposition of Lester A. Leach, Division Director for Security of the United States Mint Protection Department, to determine the extent and content of Mr. Leach's communications with others concerning the security clearance investigation of Kuklinski and its propriety. (DN 72, at pp. 1-2). This deposition is also necessary, according to Kuklinski, to understand Mr. Leach's true motivations for suspending, revoking and eventually reinstating his security clearance. (*Id.*).

The Treasury counters that any deposition of Mr. Leach is improper because the Court has already ruled that any challenges to the merits underlying the decisions to investigate and suspend Kuklinski's security clearance are not actionable based on the Supreme Court's holding in *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). (DN 74, at p. 3 (citing DN 43, at p. 9)). Taking Mr. Leach's deposition to learn of his communications regarding the security clearance investigation, the Treasury explains, would be in direct conflict with the Court's prior Memorandum Opinion. (*Id.*).

In reply, Kuklinski contends that neither the Court's earlier opinion nor *Egan* should prohibit the deposition of Mr. Leach. He emphasizes that *Egan* protects the merits of a security clearance decision from judicial review but does not protect a department's procedures. (DN 78, at p. 3). He points out that the Court's earlier Memorandum Opinion specifically recognized the judiciary may "hear a claim in which the agency is alleged to have violated its own regulations in making a security-clearance decision." (DN 78, at p. 2 (quoting DN 54, at p. 8 n. 2)). Kuklinski believes this is precisely what the Treasury did in his case: "abuse[d] its security clearance

5

regulations and procedures to inflict punishment on [him]." (*Id.*). Kuklinski cites to deposition testimony from other U.S. Mint Officers (Connie Stringer, Bill Bailey, and Paul Constable) as suggesting that there may have been a violation of the U.S. Mint's policies in conducting his security clearance investigations. (*Id.* at p. 3). Kuklinski concludes that Mr. Leach has the most knowledge and experience regarding whether any impropriety or violation of policy may have occurred. (*Id.* at pp. 3-4).

A brief review of the Court's earlier opinion and the Supreme Court's decision in *Egan* is useful. In *Egan*, the Supreme Court held that "[t]he grant or denial of security clearance to a particular employee is a sensitive and inherently discretionary judgment call that is committed by law to the appropriate Executive Branch agency[.]" *Dep't of Navy v. Egan*, 484 U.S. 518, 527 (1988). The Court acknowledged the ordinary presumption that agency action is reviewable but distinguished that the presumption "runs aground when it encounters concerns of national security." *Id.* at 527. The protection of classified information "must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it." *Id.* at 529. For this reason, *Egan* holds "it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Id.* To summarize, unless Congress has specifically provided otherwise, the judiciary generally will not intrude upon the authority of the executive branch in national security affairs. *Id.* at 530.

This Court's earlier Memorandum Opinion discussed how *Egan's* separation-of-powers rationale applies with equal force to prohibit judicial review of Title VII claims premised on security-clearance decisions. (DN 43, at p. 7 (collecting cases)). Kuklinski's Title VII claims for

6

retaliation, this Court determined, would require it to examine the legitimacy and possible pretextual nature of the Treasury's proffered reasons for investigating and suspending his security clearance. (*Id.* at p. 7). This Court found "inquiry into whether a retaliatory motive animated the Treasury's decisions 'constitute[s] precisely the sort of interference criticized in *Egan*.'" (*Id.* at pp. 7-8 (quoting *Tenebaum v. Caldera*, 45 F. App'x 416, 418 (6th Cir. 2002)). The Court followed this conclusion with a footnote, identifying two instances where judicial review in this context may be appropriate: (1) where a plaintiff alleges violation of a constitutional right and (2) where a plaintiff alleges the agency violated its own regulations in making a security clearance decision. (*Id.* at p. 8 n. 2 (citing *Tenenbaum*, 45 F. App'x at 418)). But the Court clarified that Kuklinski failed to advance either of those potential grounds for review in his allegations. Although the Court dismissed Kuklinski's Title VII claims to the extent that they challenge the substance of security-clearance decisions, it determined that Kuklinski's claims otherwise remain intact and expressed "no opinion on any of the other alleged acts of retaliation, such as the administrative investigation, the removal of Plaintiff's authority as a supervisor, the relocation of his work space, and the directed reassignment." (DN 43, at p. 9).

With this guidance in mind, the Court finds that the information Kuklinski seeks from Mr. Leach is not relevant and not properly discoverable. For instance, Kuklinski seeks Mr. Leach's communications with others concerning his security clearance investigation and Mr. Leach's motivations for revoking and then later reinstating his security clearance. Discovery on these proposed topics is clearly precluded by the Court's earlier Memorandum Opinion. Kuklinski attempts to evade *Egan* and the Court's earlier Memorandum Opinion by claiming he seeks to discover whether the Treasury followed the proper procedures during his security investigations.

7

He cites to *Tenebaum v. Caldera*, where the Sixth Circuit noted that "[c]ourts may be permitted to hear cases in which an agency violates its own regulations in the process of revoking a security clearance." 45 F. App'x 416, 418 (6th Cir. 2002). Yet Kuklinski ignores that the court in *Tenebaum* found that exception inapplicable because the plaintiff raised the issue of the agency violating its own regulations for the first time in his opening brief on appeal. *Id.* Like the plaintiff in *Tenebaum*, Kuklinski did not present a specific cause of action to the district court regarding the violation of any internal regulations or procedures, which is reflected in the Court's earlier Memorandum Opinion. (*See* DN 43, at p. 8 n. 2). Because this issue is not properly before the Court, Kuklinski fails to demonstrate good cause for an extension of time to take the deposition of Mr. Leach.

### B. Deposition of Irwin Ansher

Next, Kuklinski alleges the deposition of Irwin Ansher, from the Office of the General Counsel of the U.S. Department of Treasury, is necessary because Mr. Ansher has been involved in every aspect of this case and depositions of other witnesses reveal that certain U.S. Mint officials defended their decisions based on Mr. Ansher's advice. (DN 72, at p. 2). Mr. Ansher's deposition is also necessary, Kuklinski argues, because Mr. Ansher breached the confidentiality of medical documents provided to him for purposes of settlement discussions and used them to request his expert make a determination on Kuklinski's fitness for duty. (*Id.*). Kuklinski specifically seeks to discover: (1) the legal advice Mr. Ansher provided on which the U.S. Mint relied concerning the investigations of Kuklinski and concerning the Gregg Longo/Leann Polston matter and (2) Mr. Ansher's involvement in abusing the mediation process to punish Kuklinski. (*Id.*). In opposition, the Treasury submits that taking Mr. Ansher's deposition is improper based on

8

the attorney-client privilege, the conflict with Kuklinski's counsel, and the Rule 26 proportionality requirements. (DN 74).

### 1. Mr. Ansher's Legal Advice

The Treasury specifically believes that Mr. Ansher's "legal advice" to U.S. Mint employees is protected by attorney-client privilege and is, therefore, not discoverable. (DN 74, at p. 4). Kuklinski replies that the Treasury's "blanket, vague statement" that Mr. Ansher provided legal guidance to U.S. Mint employees regarding the investigation of Kuklinski is insufficient to invoke the attorney-client privilege. (DN 78, at p. 6). Even if the Treasury was able to establish the attorney-client privilege applies to Mr. Ansher's communications, Kuklinski argues that the Treasury waived the privilege by using the "advice of counsel defense." (*Id.* at pp. 6-7 (citing *In re Lott*, 424 F.3d 446, 452-53 (6th Cir. 2005)).

The attorney-client privilege serves to protect from disclosure "'confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.'" *Ross v. City of Memphis,* 423 F.3d 596, 600 (6th Cir. 2005) (quoting *In re Grand Jury Subpoena (United States v. Doe),* 886 F.2d 135, 137 (6th Cir. 1989) (additional citation omitted)). The Sixth Circuit recognizes that a government entity, like the U.S. Mint, can assert attorney-client privilege in civil proceedings. *Id.* at 601. Generally in conversations between government officers and the government's counsel, the government agency is considered the client, rather than any individual officers. *See id.* at 605 (citing *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 1002)). An individual officer, however, can hold the privilege based on communications with government counsel when the individual officer indicates to the

9

government's counsel that he seeks advice in his individual capacity. *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).

The Court agrees with the Treasury that any legal advice Mr. Ansher provided concerning the investigations of Kuklilnski or the Gregg Longo/Leeann Polston matter are protected by the attorney-client privilege. The communications Kuklinski seeks were made between a client and an attorney in an effort to obtain legal services and, therefore, may not be disclosed. *See United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.), *cert. denied*, 377 U.S. 976 (1964)). For this reason, the Court will not permit Kuklinski to take Irwin Ansher's deposition for the purpose of discovering the legal advice he gave to the U.S. Mint.

As for Kuklinski's allegation that the Treasury has waived attorney-client privilege, the Court finds he has misconstrued the scope of "the advice of counsel defense." A party can implicitly waive the attorney-client privilege by announcing he will rely on advice of counsel as a defense in a claim or a pleading. *Ross*, 423 F.3d 596, 605 (6th Cir. 2005); *In re EchoStar Communications Corp.*, 448 F.3d 1294, 1299 (Fed. Cir. 2006). The Treasury, however, raises no such "advice of counsel defense" in any pleading. Rather, Kuklinski merely points to a line from Officer Bill Bailey's deposition transcript where Bailey stated that he was advised by Mr. Ansher, as counsel, when he was making his punishment determination for Officer Longo, in the harassment matter. (DN 78, at pp. 6-7 (citing DN 78-4, at p. 26)). This deposition testimony alone does not constitute an "advice of counsel defense" by the Treasury and, therefore, does not waive the attorney-client privilege existing between Mr. Ansher and his client.

Based on these considerations, the Court denies Kuklinski's request for an extension of time to depose Mr. Ansher as to the legal advice he provided to the U.S. Mint.

2. Mr. Ansher's Abuse of the Mediation Process

The Treasury submits two arguments against permitting Mr. Ansher's deposition with respect to the mediation inquiry. First, it claims that Kuklinski's counsel, Mr. Hannon, must recuse himself from the case because he is an indispensable witness on this issue. (DN 74, at p. 8). The Treasury does not cite to any case law supporting this argument and relies only on the Kentucky Rules of Professional Conduct, which generally do not permit a lawyer to be an advocate in a case where he is also a witness. (*Id.* at p. 7). Kuklinski replies that Mr. Hannon is not an indispensable witness because another party, Ms. Emily Sprague, Esq., was privy to the conversations between Mr. Hannon and Mr. Ansher. (DN 78, at pp. 7-8). Kuklinski emphasizes that recusal of Mr. Hannon would be premature at this time. (*Id.*).

Generally, an attorney-witness is required to withdraw if he is an indispensable witness, meaning "he must have 'crucial information in his possession which must be divulged.'" *Davis v. Stamler*, 494 F. Supp. 339, 342 (D.N.J. 1980) (quoting *Universal Athletic Sales Co. v. Am. Gym, Recreational & Athletic Equipment Corp., Inc.,* 546 F.2d 530, 539 n. 21 (3d Cir. 1976) (additional citation omitted)). Requiring an indispensable attorney-witness to withdraw best serves the public interest by "the separation of the roles of advocate and witness[.]" *Gen. Mill Supply Co. v. SCA Servs., Inc.,* 697 F.2d 704, 712 (6th Cir. 1982). An attorney-witness is not indispensable, however, if other witnesses are readily available to testify as to the same information. *See Universal Athletic Sales*, 546 F.2d at 539 n. 21.

The Court is not convinced that Mr. Hannon is a necessary witness in this case. Although Mr. Hannon's testimony may be helpful and important to Kuklinski's claim that the Treasury breached the mediation agreement by disclosing confidential information, Kuklinski identifies that

Ms. Emily Sprague, Esq., was also a party to the conversations at issue. Because another witness may be readily available to testify as to the same information, it is not appropriate at this time to disqualify Mr. Hannon or to prohibit Mr. Ansher's limited deposition on this basis.

Second, the Treasury argues that taking Mr. Ansher's deposition is improper because the facts surrounding Mr. Ansher's use of medical documents provided for settlement negotiations are not important to the case and do not satisfy the proportionality requirement of Fed. R. Civ. P. 26(b)(1). (DN 74, at pp. 5-6). As outlined above, material must be both relevant and proportional to be discoverable. *See* Fed.R.Civ.P. 26(b)(1).

Here, Kuklinski's proposed inquiry to Mr. Ansher about his involvement in the mediation process is relevant to his claim that the Treasury breached its mediation agreement. Proportionality also favors Kuklinski because he is not likely to discover information pertaining to Mr. Ansher's actions during the mediation from another source or in another manner. The Treasury's argument against proportionality is not compelling in that it only argues that Kuklinski already has access to the requested information through written responses to interrogatories, responses to requests for documents and other deposition testimony. The Treasury neither explains why or how the deposition topics that Kuklinski now seeks are identical to previous discovery productions or why or how the identical discovery requests are disproportional to the case. Based on this, the Court finds a limited deposition of Mr. Ansher, relating to his actions during the mediation process, is proportionate to the needs of the case.

The Court also finds Kuklinski has shown good cause for extending the discovery period to take the limited deposition of Mr. Ansher because Kuklinski filed his motion to amend his complaint (DN 72) on the day the discovery period expired, which the Court granted on January 1,

2017. (DN 81). The amended complaint added Kuklinski's claim that the Treasury breached its agreement to participate in a confidential mediation. (DN 81, at ¶¶ 66-71). Because Kuklinski seeks Mr. Ansher's testimony relating to this claim and he has not otherwise had the opportunity to seek discovery on this claim, the Court finds good cause exists for Mr. Ansher's limited deposition. The Court, accordingly, will permit Kuklinski to take the deposition of Mr. Ansher for the limited purpose of inquiring as to Mr. Ansher's actions during the mediation proceedings.

### C. Rule 30(b)(6) Deposition of the OIG

Kuklinski believes a Rule 30(b)(6) deposition of the OIG is necessary to understand its role in investigating his security clearance and any abuse of that process. (DN 72, at p. 2). Once again, the Treasury argues such a deposition would violate the Court's earlier Memorandum Opinion (DN 43) and the Supreme Court's holding in *Egan*. (DN 74, at p. 8). Kuklinski reiterates that he is not challenging the merits of the investigation or suspension but is seeking information related to the procedures and informal processes used during the security investigation, which is discoverable. (DN 78, at p. 8).

As outlined in Section "A" above, Kuklinski is not entitled to discovery on information relating to the procedures and informal processes that the U.S. Mint used during the security clearance investigation because he did not properly raise the issue before the Court. Based on these considerations, Kuklinski has not demonstrated good cause for an extension to take a Rule 30(b)(6) deposition of the OIG.

### D. Rule 30(b)(6) Deposition of the U.S. Mint

Kuklinski lastly states that a Fed. R. Civ. P. 30(b)(6) deposition of the U.S. Mint is needed because the depositions of Connie Stringer, Paul Constable, Dennis O'Connor, and Bill Bailey

revealed contradictory testimony regarding the U.S. Mint's actions toward Kuklinski, their individual responsibilities, and their understanding of the U.S. Mint's policies and procedures. (DN 72, at p. 2). The Treasury responds that Kuklinski fails to establish the minimal requirements of Fed. R. Civ. P. 30(b)(6) because he did not describe the matters for examination with reasonable particularity. (DN 74, at p. 9). In reply, Kuklinski clarifies that he has not yet served a Rule 30(b)(6) notice, and therefore, did not fail to meet its minimal requirements. (DN 78, at p. 9).

Again, the Court has determined that Kuklinski cannot properly inquire into whether the U.S. Mint violated its policies and procedures relating to Kuklinski's security clearance investigation. Because Kuklinski does not put forth additional justification for taking a Rule 30(b)(6) deposition of the U.S. Mint, he has not established good cause, and the Court denies this request.

# **ORDER**

**IT IS HEREBY ORDERED** that Plaintiff Anthony Kuklinski's motion for extension of time to complete discovery (DN 72) is **GRANTED IN PART** and **DENIED IN PART.**

Kuklinski's request to extend discovery to take the deposition of Lester A. Leach and the Rule 30(b)(6) depositions of the OIG and the U.S. Mint is **DENIED.**

Kuklinski's request to extend discovery to take the deposition of Irwin Ansher is **GRANTED** for the limited purpose of inquiring as to Mr. Ansher's actions during the mediation process. All other topics of inquiry are prohibited during this deposition. The Court extends the discovery deadline by 60 days from the entry of this Order to allow Kuklinski to effectuate Ansher's limited deposition.

Copies:	Counsel of Record